### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAYMOND CALLAIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-4258** |
| **AMERICAN SOUTHERN HOME INSURANCE COMPANY** | **SECTION  "I" (3)** |

### MEMORANDUM ORDER
### DISMISSING INTERVENOR'S COMPLAINT FOR
### FAILURE TO COMPLY WITH CONDITIONS IMPOSED AND/OR
### WITH THE UNDERSIGNED MAGISTRATE JUDGE's ORDER
### TO THE PREJUDICE OF THE ORIGINAL PARTIES/SETTLORS

For reasons set forth below, the undersigned Magistrate Judge DISMISSES *with prejudice* the intervention filed by The Law Offices of Paul Miniclier. This Court's order granting leave to file the proposed intervention for attorney's fees and costs was predicated upon intervenor's compliance with a scheduling order which issued simultaneously.  This imperative was quite obviously driven by the reality that any delay on intervenor's part would deprive Mr. Miniclier's former clients (Raymond and Vivian Callais) and the settling defendant of the benefit of their bargain and imperil the settlement of their claims in the above entitled and captioned matter.   Timeliness is a consideration even as to the Rule 24(a) intervention of right.  This Court fashioned conditions which would preclude both *undue* delay and *undue* prejudice to the settling parties.  Intervenor failed to comply with the terms imposed by the undersigned Magistrate Judge, which were not uncommon considering that the intervention was for attorney's fees.

### THE PLEADINGS

1

On August 22, 2007,  Raymond and Vivian Callais (the Callais ) filed this Hurricane Katrina-related coverage suit against its insurer American Southern Home Insurance Company for wind damage to their home on Aragon Road in Montegut, Louisiana.  Plaintiffs alleged that there was massive wind damage, including roof damage and wind-driven rain damage to contents.  The Callais further alleged that no flooding whatsoever affected their home.   Their contractor's roof damage estimate alone was $27,801.40 not taking into account any of the interior damages or loss of contents.  Plaintiffs further alleged bad faith in a number of particulars, including bad faith claims handling which precluded their repairs to prevent the spread of mold.  Vivian Callais allegedly became extremely ill and was hospitalized at least twice for toxic mold poisoning.

The policy at issue provided $43,847.00 for dwelling, $17,000 for contents, and $4,000.00 dwelling extension/other structures.  American Southern adjusted the loss at $2,136.73 minus the $1,000.00 hurricane deductible leaving a net loss of $1,136.73.

## PROCEDURAL BACKGROUND

On April 21, 2008, the case settled.  The motion for leave to intervene filed by plaintiffs' former counsel, The Law Offices of Paul C. Miniclier, was set for hearing on May 7, 2008.

On May 7, 2008, the Court conducted an oral hearing regarding Miniclier's motion to intervene as a matter of right, which was also the topic of some discussion at the settlement conference.  In this regard, plaintiffs' former counsel had refused to reveal either the amount of time he had in the case or even an estimate of his fee.  Paul Miniclier did not appear at the hearing on the motion to intervene, instead his associate (Sandrea Everett) made an appearance.  Not a word was mentioned about an arbitration clause in the contract between the Callais and Paul Miniclier.  This Court was left with the impression that The Law of Offices of Paul Miniclier intended to submit to the jurisdiction of this Court and comply with orders to brief the attorney's fee dispute.

2

In opposing Miniclier's  Motion to Intervene, plaintiffs emphasized that he did nothing to further their cause and potentially prejudiced their right to any recovery by failing to provide Rule 26.1 disclosures.  The Callais requested a finding that Miniclier was terminated *for cause* and thus limited to a recovery of only actual costs.

Miniclier countered that he was entitled to recover fees and costs based upon the fact that he represented the Callais plaintiffs until March 28, 2008, when they fired him.  Former counsel sought the maximum due under his contract (40% contingency fee) to the exclusion of any recovery by plaintiff's current counsel, who actually prepared for the settlement conference and effected the settlement of the plaintiffs' case.

The Court here highlights that a motion to compel (Doc. # 19) had been filed by American Home, seeking to strike all of plaintiff's evidence and causes of action based upon the repeated failure of Miniclier to provide Rule 26.1 Disclosures and/or to provide even minimalist discovery as required under the governing rules.   Indeed,  plaintiffs' former counsel had been ordered twice by the district judge  to provide outstanding initial disclosures.[1]  Miniclier has suggested in one memorandum that Ms. Christian (formerly associated with The Law Offices of Paul C. Miniclier) was in actuality the one who failed to comply with the district judge's order to prepare and file initial disclosures. Assuming *arguendo* that Ms. Christian was remiss, Miniclier's argument stands as no less than an admission that he even failed to supervise the Callais' file; nevertheless, he seeks to exact a 40% contingency fee for his own inattention.

DISCUSSION

---

[1]*See* Scheduling Order filed December 4, 2007 (stating that "[i]nitial disclosures...must be exchanged no later than Tuesday, December 18, 2007") [Doc. #9]; Minute Entry dated January 29, 2008 (ordering "plaintiffs to respond to outstanding initial disclosures no later than Monday, February 11, 2008).

Former counsel's failure to supervise or failure to comply with court orders to provide initial disclosures created a discovery void and, concomitantly, the clear and present danger that there would be no offer to settle from American Home .  Even worse, there was the real possibility that the Callais' claims would be stricken for failure to prosecute.

Whereas this Court was inclined and did give Miniclier the benefit of the doubt, even though Miniclier did not personally appear to argue his own motion to intervene, in retrospect and in light of the proceedings to date, this Court now comes to the opposite conclusion.  It is pellucid on this record that plaintiffs' former counsel (1) did nothing beyond the filing of plaintiff's original complaint, (2) jeopardized his former clients' ability to recover *any* benefits under their homeowner's policy in this litigation,[2] and (3) is content to unreasonably protract an ordinary fee dispute to the detriment of settling parties.  Miniclier has been given both the opportunity and more than sufficient time to submit his fee application, particularly considering that this case was not prepared for trial at all.

Even at this writing (four weeks post-hearing and long after the briefing schedule has expired), Miniclier has identified no work on the Callais' file -- *i.e.*, no depositions, no motion practice and no settlement negotiations on behalf of the Callais.  Miniclier only came to life when the plaintiffs' fired him and then only to prosecute *his own* intervention for fees/costs.  Essentially, Miniclier would have the Callais  pay dearly (a 40% contingency fee) for his failure to prepare their case for trial in August, 2008. Indeed, Miniclier completely ignored the conditions upon which his intervention was permitted so as to preclude prejudice to the settlors caused by any *undue* delay.

This Court's May 7, 2008 Minute Entry Order states in no uncertain terms, to wit:

---

[2]*American Home's* Motion to Compel Initial Disclosures # 19 was dismissed as moot simply because the parties agreement to settle the case rendered it moot. *See* Minute Entry dated April 21, 2008.

" **IT IS ORDERED** that:

(1) The Law Office of Paul Miniclier's Motion to Intervene #23 is GRANTED; *however Intervenor <u>must</u> comply with the following briefing schedule*.

(2) On or before <u>**Friday, May 16, 2008,**</u> Intervenor shall file his application for fees and costs in this matter in compliance with Local Rule 54.2, including contemporaneous time records reflecting the date, time involved and the nature of services performed.

(3) On or before <u>**Friday, May 23, 2008**</u>, Plaintiffs shall file any written response they may have, following which the matter shall be deemed submitted for determination.  THERE WILL BE <u>NO</u> ORAL HEARING."[3]

To date, Intervenor has not filed his application for fees and costs.  Miniclier did file a motion for extension of time which was terminated based upon a deficiency which was never corrected.[4] Intervenor did attempt to appeal this Court's order setting forth the conditions under which leave to intervene was granted; however, his objections have been stricken by the district judge.[5]  Insofar as Miniclier's efforts to infuse even more delay into the process, the record speaks for itself.[6]  Suffice it to say, he has completely ignored this Court's order to file his application for fees by May 16, 2008. This Court gave intervenor ample opportunity to file his application for attorneys fees and answer the burning question, "Fees for doing what?"[7]  It is a simple question that deserves a simple answer in the form of an application, which is typically used by this Court and described in the Local Rules.  The undersigned could not have been clearer, to wit: *Intervenor's* application for fees was the *answer* that

---

[3] *See* Minute Entry Order dated May 7, 2008 (noting that the proposed intervenor failed to appear for oral argument) (italicized and underlining emphasis in line 2 of the quotation added) [Doc. # 29].

[4] *See* Intervenor's Ex Parte Motion for an Extension of Time to File Application for Fees and Costs [Docs. ## 31, 32]; Deficiency Notice entered May 15, 2008.

[5] *See* Order Striking Objections for failure to comply with Local Rule 74 [Doc. #50].

[6] *See* Intervenor's Motion to Stay filed May 15, 2008 [Doc. #34].

[7] *See* Minute Entry dated May 7, 2008 [Doc. #29].

was expected by this Court and that filing same with due haste was *imperative*.  Instead of filing a simple fee application, Miniclier has turned this settled case into a Donnybrook Fair.

The Law Office of Paul C. Miniclier has invested a substantial, if not an inordinate, amount of time and effort in protecting its right to exact a fee *in this matter*.   Intervenor's refusal to comply with this Court's imperative and his resort to every motion possible, including a motion to stay, hoping to circumvent the conditions under which he was permitted to intervene, is unprecedented.   The undersigned has no choice but to DISMISS the Intervention filed by The Law Offices of Paul C. Miniclier WITH PREJUDICE.  Absent such relief, prejudice to the settlors is manifest.  It is now over a month and a half post-settlement and three weeks have expired since Miniclier's application was due.  Intervenor has plaintiff's recovery in a seemingly perpetual suspensive state and closure sought *via* negotiated settlement for all intents and purposes has been denied.  *Former counsel's*  failure to abide by the terms set forth in this  Court's order granting leave to intervene is the sole source of this *undue* prejudice.

Federal Rule of Civil Procedure 37 allows the Court to "dismiss the action ... or any party thereof"  for a failure "to obey an order to provide or permit discovery"  and "to serve answers or objections to interrogatories."  Fed. R. Civ. P. 37(b)(2)(C), (d).  In determining whether dismissal pursuant to this rule is warranted, courts consider and balance six factors: 1) the extent of the party's responsibility; 2) the prejudice to the adversary caused by the party's actions or inactions; 3) a history of dilatoriness; 4) whether the misconduct of the party was willful or in bad faith; 5) the effectiveness of sanctions other than dismissal; and 6) the meritoriousness of the claim or defense. The undersigned Magistrate Judge has considered all six and discussed each factor in the context of the foregoing narrative.  Each and every factor militates in favor of dismissal, including the sixth --*i.e.*, the meritoriousness of the plaintiffs' defense and the speciousness of Intervenor's claim for a 40%

contingent fee when the simple question (For doing what?) remains unanswered.

Indeed, the plaintiffs are entitled to *discover* the factual basis of the Intervenor's claim for a 40% contingency fee or any other fee. Rather than resort to traditional discovery methods after the close of this case *via* settlement, the undersigned resorted to the method traditionally employed in the United States District Court for the Eastern District of Louisiana to discern the parameters of an intervenor's claim for fees and costs. It would be unusual, particularly considering this district's post-Hurricane Katrina docket, for a district judge to conduct an ordinary proceeding for the purposes of determining a fee dispute. Nonetheless, intervenor has flatly refused to comply with this Court's orders and/or the methodology employed, which are hardly a novelty in the Eastern District of Louisiana.

Accordingly and for all of the above and foregoing reasons,

**IT IS ORDERED** that Intervention for Fees and Costs filed on behalf of the Law Offices of Paul C. Miniclier is DISMISSED WITH PREJUDICE.

## OBJECTIONS

A party's failure to file objections to the foregoing findings and conclusions in the foregoing memorandum opinion and order within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana this <u>11th</u> of June, 2008.

7

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**